OPINION OF THE COURT
Robert W. Doyle, J.
This is a motion by plaintiff, in this action for a permanent injunction, for a preliminary injunction directing that defendant Dwayne Chappel, a student at East Islip High School, be suspended from regular instruction and placed on homebound instruction at District expense pending a psychiatric evaluation and review by the District’s Committee on Special Education.
On March 8, 1994, Dwayne Chappel was apprehended after running out of the high school waiving an iron bar which he had kept in his locker while yelling "I’m going to * * * kill you”. Dwayne had been previously classified as learning disabled by the District and was receiving special education services. As a result of this incident, Dwayne was suspended. However, in view of defendant’s classification as a handicapped student and Federal legislation regarding the placement of such students (Education of the Handicapped Act, 20 USC § 1400 et seq.), plaintiff School District could not unilaterally suspend defendant from classes for a period in excess of 10 days. An extended suspension beyond 10 days is considered a change in the placement of a handicapped student which Federal law prohibits a School District from doing without first satisfying certain procedural safeguards. Acting out of safety concerns for other students and faculty, plaintiff therefore brought on this application to continue defendant’s suspension until such time as a proper evaluation of defendant’s placement, including a possible change in that placement, could be made.
The Education of the Handicapped Act (20 USC § 1400 et seq.) (Act) was enacted by Congress "to assure that all handicapped children have available to them * * * a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, [and] to assure that the rights of handicapped children and their parents or guardians are protected” (20 USC § 1400 [c]). The primary vehicle by which this goal is to be implemented is the "individualized educational program” (IEP) which the Act *947 mandates for each disabled child and which is to be prepared at meetings between the local school district, the child’s teacher, the parents or guardians and whenever appropriate, the child (20 USC § 1401 [19]). This IEP must be reviewed and, if needed, revised on an annual basis (20 USC § 1414 [a] [5]).
Aware that schools had, in the past, denied disabled children appropriate education without consulting their parents (see, Honig v Doe, 484 US 305, 311), Congress also emphasized in repeated instances throughout the Act the need for parental participation in both the development of an IEP and any subsequent changes. In order to insure this parental participation, the Act established procedural safeguards. These include the right to examine relevant records of the child, prior written notice of any proposed changes in the child’s placement or program, an opportunity to present complaints regarding the child’s IEP and an opportunity for an impartial due process hearing with respect to those complaints. In addition, the Act provided that at the conclusion of the hearing, either the parent or local educational agency could seek further administrative review and, if necessary, file a civil action in any State or Federal court (20 USC § 1415 [c], [e] [2]). The Act also provided that the child’s placement status not be changed during the course of these review proceedings. This "stay-put” provision directs that: "During the pendency of any proceedings conducted pursuant to [section 1415], unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child” (20 USC § 1415 [e] [3]).
In the present case, plaintiff, cognizant of the "stay-put” provisions of the Education of the Handicapped Act which preclude a unilateral change in the child’s placement, commenced this action and made this application for preliminary injunctive relief in order to continue defendant’s suspension from school, with home instruction, during the pendency of the review procedures contained in the Act. Plaintiff has, in fact, commenced the appropriate evaluations and begun the proceedings required in order to consider a change in placement. The basis for plaintiffs application to this court is its concern that a substantial likelihood exists that defendant will endanger other students if he is returned to school pending the proceedings initiated under the Act.
In Honig v Doe (484 US 305, supra), the United States Supreme Court acknowledged that a State or local educational *948 agency could not unilaterally change a child’s placement during proceedings under the Act even where that student posed a threat of danger to himself or to others. The Court noted that it was the intent of Congress to deny schools that unilateral authority. The Court did recognize, however, that where there was a safety concern, schools are not powerless to act. "[Wjhere a student poses an immediate threat to the safety of others, officials may temporarily suspend him or her for up to 10 schooldays. This authority * * * not only ensures that school administrators can protect the safety of others by promptly removing the most dangerous of students, it also provides a 'cooling down’ period during which officials can initiate IEP review and seek to persuade the child’s parents to agree to an interim placement. And in those cases in which the parents of a truly dangerous child adamantly refuse to permit any change in placement, the 10-day respite gives school officials an opportunity to invoke the aid of the courts * * * to grant any appropriate relief.” (Supra, at 326.)
Thus, the Supreme Court recognized that although the school could not unilaterally change a child’s placement status out of safety concerns, the Act did not limit the equitable powers of the Courts to, "in appropriate cases, temporarily enjoin a dangerous disabled child from attending school” (Honig v Doe, supra, at 327). The Court went on to hold that (at 328) "school officials are entitled to seek injunctive relief under § 1415(e)(2) in appropriate cases. In any such action, § 1415(e)(3) effectively creates a presumption in favor of the child’s current educational placement which school officials can overcome only by showing that maintaining the child in his or her current placement is substantially likely to result in injury either to himself or herself, or to others.”
Based upon this authority, plaintiff herein seeks a preliminary injunction authorizing it to continue the suspension of defendant beyond 10 days until such time as review proceedings regarding defendant’s placement are complete. As the Supreme Court held in Honig v Doe (supra), plaintiff bears the burden on such an application of establishing that a continuation of defendant’s present placement is substantially likely to result in injury to himself or others.
Upon the facts before it, the court is satisfied that plaintiff has met this burden. The uncontradicted evidence before the court is from the dean of students at East Islip High School in which he details the threatening behavior in which defendant *949 has been engaging including threats against specific students and a teacher. There has been no opposition to this motion.
Accordingly, in the absence of any evidence to the contrary, the plaintiff's motion for a preliminary injunction is granted. The court further directs as a condition of this relief that plaintiff continue the homebound instruction of defendant and proceed in an expeditious manner with the change of placement proceedings.